UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

-against-

NEW YORK CITY BOARD OF EDUCATION;
CITY OF NEW YORK; LILLIAM BARRIOS-
PAOLI, PERSONNEL DIRECTOR, NEW YORK
CITY DEPARTMENT OF PERSONNEL (in her
official capacity); and NEW YORK CITY
DEPARTMENT OF PERSONNEL,

Defendants,

and

JOHN BRENNAN, JAMES G. AHEARN, DENNIS
MORTENSON and SCOTT SPRING,

Intervenors,

and

JANET CALDERO, CELIA I. CALDERON,
MARTHA CHELLEMI, ANDREW CLEMENT,
KRISTEN D'ALESSIO, LAURA DANIELE,
CHARMAINE DIDONATO, DAWN L. ELLIS,
MARCIA P. JARRETT, MARY
KACHADOURIAN, KATHLEEN LUEBKERT,
ADELE A. MCGREAL, MARIANNE
MAOUSAKIS, SANDRA D. MORTON,
MAUREEN QUINN, HARRY SANTANA, CARL
D. SMITH, KIM TATUM, FRANK VALDEZ and
IRENE WOLKIEWICZ,

Intervenors,

and

**MEMORANDUM & ORDER**
Case No. 96-CV-0374 (FB)(RML)

(consolidated with
Case No. 02-CV-256 (FB)(RML) &
Case No. 06-CV-2921 (FB)(RML))

PEDRO ARROYO, JOSE CASADO, CELESTINO
FERNANDEZ, KEVIN LAFAYE, STEVEN LOPEZ,
ANIBAL MALDONADO, JAMES MARTINEZ,
WILBERT MCGRAW, SILVIA ORTEGA DE GREEN
and NICOLAS PANTELIDES,

                     Intervenors.

------------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
ESTHER TAMBURO-LANDER, ESQ.
United States Department of Justice
Employment Litigation Section
950 Pennsylvania Ave., N.W.
Washington, DC 20530

*For the Defendants:*
LAWRENCE J. PROFETA, ESQ.
The City of New York Law Department
100 Church St.
New York, NY 10007

*For the Intervenors:*
*For Intervenor Brennan, et al.:*
MICHAEL E. ROSMAN, ESQ.
Center for Individual Rights
1233 20th Street, N.W., Suite 300
Washington, DC 20036

*For Intervenor Arroyo, et al.:*
MATTHEW B. COLANGELO, ESQ.
NAACP Legal Defense Fund &
Educational Fund, Inc.
99 Hudson St., 16th Floor
New York, NY 10013

*For Intervenor Caldero, et al.:*
EMILY J. MARTIN, ESQ.
American Civil Liberties Union
Women's Rights Project
125 Broad St., 18th Floor
New York, NY 10004

**BLOCK, Senior District Judge:**

      The United States, the Caldero Intervenors and the Brennan Intervenors have all appealed this Court's final judgment of August 22, 2008 ("the Judgment"); the latter two parties, along with the New York City Board of Education ("the Board"), now seek various

2

forms of relief pending appeal:[1]

- The Caldero Intervenors seek a stay pending appeal of "that portion of [the Judgment] declaring that calculation of seniority for purposes of transfers, TCAs, and layoff protection by reference to permanent appointment date for [male recruiting-claim beneficiaries] violates the Fourteenth Amendment." Caldero Intervenors' Mem. of Law at 2.

- The Brennan Intervenors seek an injunction barring the Board from "providing any competitive seniority benefits to any beneficiary of the Settlement Agreement executed on February 11, 1999 ('the Agreement') . . . to the extent that (1) the competitive seniority benefit resulted from the Agreement, (2) this Court found that those benefits were not a form of make-whole relief to actual victims of discrimination, and (3) this Court nonetheless found that the provision of those benefits did not violate the law." Brennan Intervenors' Mem. of Law at 3.

- The Board seeks a complete stay of the Judgment.

"The standard in this circuit for a stay or injunction pending appeal is (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (citation and internal quotation marks omitted). These factors are interrelated, such that "more of one excuses less of the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citation and internal quotation marks omitted). Thus, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Id.* (citation, internal quotation marks and alteration

---

[1] The Board also filed a notice of appeal, but has recently withdrawn its appeal with the circuit court's permission.

3

omitted).

Here, the first and second factors present two sides of the same coin. Staying the judgment would allow the Board to use the seniority dates established by the Agreement, even in cases in which the Court has held that it violates Title VII and/or the Fourteenth Amendment. The Brennan Intervenors' proposed injunction, by contrast, would prohibit the Board from using those dates even in cases in which the Court has upheld the Agreement. But the Board must continue to make transfer, TCA and layoff decisions based on *some* seniority date, and the harm resulting from the use of the "wrong" date (as determined by a higher court) is precisely the same – the loss of a transfer, TCA or job security to another custodial employee.

The Brennan Intervenors argue that the loss of a transfer or TCA to a beneficiary of the Agreement is irreparably harmful because it is of constitutional magnitude. *See* Brennan Intervenors' Mem. of Law at 9 ("[T]he deprivation of a constitutional right – in this case the right to equal protection – has been deemed an irreparable harm."). As the Supreme Court has observed, however, "rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). And as this Court held earlier in this litigation, infringement of the interests at stake here does not constitute irreparable harm. *See United States v. New York City Bd. of Educ.*, 2002 WL 31663069, at *4 (E.D.N.Y. Nov. 26, 2002) ("[The Brennan Intervenors] allege employment-related economic injuries, the types of injuries

4

long ago held insufficient to warrant the extraordinary relief of a preliminary injunction."). In the same decision, the Court rejected the Brennan Interevenors' related argument that that the harm caused by an improper award of a transfer or TCA is irreparable because the resultant damages are difficult to measure. *See id.* ("As to the impracticality of measuring damages, [the Brennan Intervenors] have failed to establish that this is the type of extraordinary case where employment related injuries are impossible to compensate."). Indeed, three of the Brennan Inventors have already sought money damages for the loss of transfers to beneficiaries of the Agreement; there is no reason why the loss of transfers and TCAs during the appellate process could not, if found unlawful by the circuit court (or by the Supreme Court), be remedied in the same manner.

For their part, the Caldero Intervenors focus on the prospect of layoffs; they argue that if the Board implements a reduction in force pending appeal, those laid off will be irreparably harmed because they cannot be reinstated to jobs that no longer exist. Once again, however, staying the Judgment does not eliminate or reduce the prospect of such harm; it merely affects which parties will incur it. More importantly, the prospect of layoffs is – as it has been throughout this litigation – speculative. If layoffs become a realistic possibility, the Court will reconsider whether to stay the Judgment; for now, the risk is too attenuated.

Finally, the Board offers a different kind of harm – the administrative expense of complying with the Judgment's modifications to the Agreement, under which the Board has operated since 2000, as well as the expense of undoing any modifications ultimately

5

reversed on appeal. Although the Board is a party, these expenses can be seen as affecting the public interest because, ultimately, they will be borne by the taxpayer. Unlike the harm identified by the Brennan and Caldero Intervenors, the administrative expense of complying with the Judgment can be avoided by a stay pending appeal; moreover, they are sunk costs that, once incurred, cannot be recovered. Nevertheless, the Judgment requires only that the Board modify the seniority dates of certain beneficiaries of the Agreement; the Board has offered no evidence that these costs of compliance will be particularly onerous.

Because allowing the Judgment to remain in effect pending appeal will not cause any serious irreparable harm, it would take a strong showing of likelihood of success in the circuit court to justify a stay or injunction. In that regard, this litigation has raised no shortage of issues in an extremely uncertain and controversial area of law. *See, e.g., Ricci v. DeStefano*, 530 F.3d 87 (2d Cir. 2008) ("[B]ecause the [New Haven Civil Service] Board, in refusing to validate the exams, was simply trying the fulfill its obligations under Title VII when confronted with test results that had a disproportionate racial impact, its actions were protected."), *cert. granted*, 129 S. Ct. 893 (2009). In other circumstances, such uncertainty might warrant a stay. *See Amara v. CIGNA Corp.*, 559 F. Supp. 2d 192, 222 (D. Conn. 2008) ("In light of the complexity of the issues and the weighty interests at stake, as well as the possibility that some or all of this opinion . . . may be reversed on appeal, the Court believes that a stay is appropriate."). Here, however, the uncertainty is such that both those defending the Agreement and those opposing it have colorable arguments to

present to the circuit court; the likelihood of success on appeal is no stronger in one direction than the other.

In sum, neither the threat of irreparable harm nor the likelihood of success on appeal is sufficiently one-sided to justify disturbing what the Court believes to be the legally correct result. Accordingly, all three motions for relief pending appeal are denied.

**SO ORDERED.**

s/FB

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 2, 2009